

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. John P. Parsons
Commissioner
Texas Credit Union Department
914 East Anderson Lane
Austin, Texas    78752

Opinion No. MW-579

Re:    Whether    credit    union
chartered under Texas  Credit
Union  Act   may   offer   debt
securities for sale

Dear Mr. Parsons:

You have requested our opinion on certain issues relating to the authority of Texas credit unions to issue debt securities and the regulation of those securities.

Your first question is whether credit unions chartered under the Texas Credit Union Act, article 2461-1.01 et seq., V.T.C.S., have the authority to sell debt securities to their members and to the general public.  The securities involved in this inquiry are debt instruments such as bonds and debentures not share accounts or other savings, deposits placed in credit unions by their members.

The bonds and similar securities in question are instruments of debt by which the issuer borrows money from the purchasers.  See generally, Black's Law Dictionary 224, 408 (4th ed. rev. 1968). Essentially, by selling a bond, the issuer borrows money and creates a debt, evidenced by the bond, which the issuer is obligated to repay at fixed times at a stated rate of interest, to the bond purchaser or a subsequent bona fide holder.  Bonds can either be secured by certain property of the issuer or unsecured.  An unsecured bond is generally labeled a debenture.

Under the Credit Union Act, credit unions are given the power to "borrow  money  from  any  source."  V.T.C.S.  art.  2461-4.01(10). Although  the  borrowing  authority  of  credit  unions  is  subject  to certain restrictions discussed later in this opinion, that authority is not limited in method or form.  Specifically, for purposes of our inquiry, the act contains no indication that incurring debt through the sale of bonds is not included under the general borrowing power granted by section 4.01(10).  Therefore, the sale of debt securities by credit unions organized under the Credit Union Act is an authorized form of borrowing under the act.

Although section 4.02 grants the credit unions certain powers to accomplish their purposes, it does not expand or otherwise modify the express provisions of the act. Because a credit union's specific authorization to borrow money under section 4.01(10) includes the power to issue bonds, section 4.02 does not expand that power and is not applicable in the present case.

The present inquiry includes the question of whether the credit unions can sell the securities they issue to the general public as well as to credit union members. Section 4.01(10) makes clear that credit unions' borrowing authority allows them to "borrow money from any source." (Emphasis added). This language does not restrict a credit union's borrowing to its membership. If the legislature intended to limit the credit union's borrowing sources, it could have expressed such a limitation. The legislature, for instance, did express such a limitation with respect to the credit unions' lending authority. A credit union is only allowed to "lend its funds to its members." (Emphasis added). V.T.C.S. art. 2461-4.01(8). The broad language of section 4.02(10) authorizes borrowing from the general public as well as from credit union members. Therefore, under the Credit Union Act, credit unions are authorized to borrow money through the issuance of debt securities. Those securities may be sold to the general public as well as to credit union members.

Your second question asks to what extent debt securities issued by credit unions are exempted from the Texas Securities Act by section 11.17 of the Credit Union Act. Section 11.17 provides:

> Credit unions, whether authorized to do business under this Act or the Federal Credit Union Act, their officers, employees, and agents in the sale, issuance, or offering of any security issued by any state or federal credit union are exempt from the provisions of the laws of this state, other than as required by this Act, which provide for the supervision, registration, or regulation in connection with the sale, issuance, or offering of securities as the term is defined in Section 4, Securities Act, as amended (Article 581-4, Vernon's Texas Civil Statutes). The sale, issuance, or offering of any such security is legal without any action or approval on the part of any official, other than the credit union commissioner, authorized to license, regulate, or supervise the sale, issuance, or offering of securities.

V.T.C.S. art. 2461-11.17.

Initially, it should be noted that bonds and similar debt securities are "securities" under the Securities Act. Section 4(A) of that act defines "securities" to include any "bond, debenture,... or other evidence of indebtedness." V.T.C.S. art. 581-4(A). This definition of securities is expressly referenced for application in section 11.17 of the Credit Union Act.

Although not mentioned by name, the Securities Act is the primary statute to which the section 11.17 exemption applies. That act is part of "the laws of this state... which provide for the supervision, registration, or regulation in connection with the sale, issuance, or offering of securities." V.T.C.S. art. 2461-11.17. The question, therefore, becomes: "to what extent are debt securities issued by credit unions exempt from provisions of the Securities Act by section 11.17."

In construing the extent of the exemption, it is important to note that section 11.17 does not grant a blanket exemption from the Securities Act. If the legislature intended such complete exemption, it could have briefly and directly stated that intention. Instead of exempting those securities from compliance with all provisions of the Texas Securities Act, section 11.17 only gives credit unions a form of transaction exemption in the issuing of securities. That section states that credit unions and their agents are exempt "in the sale, issuance, or offering of any security issued by any state or federal credit union." The extent of this exemption is clarified by the second sentence of section 11.17 which provides that the "sale, issuance, or offering of any security is legal without any action or approval on the part of" the state securities commissioner. Under the Securities Act, the securities commissioner is the "official... authorized to license, regulate, or supervise the sale, issuance, or offering of securities." V.T.C.S. art. 2461-11.17.

The effect of section 11.17, therefore, is to allow credit unions to offer and sell securities without seeking or obtaining any form of authorization under the Securities Act. Specifically, credit unions are allowed to offer and sell securities without compliance with the security registration requirements of section 7 of the Securities Act. V.T.C.S. art. 581-7. Further, the persons offering and selling securities on behalf of credit unions are exempt from the licensing requirements of section 12 of the Securities Act. V.T.C.S. art. 581-12. By the terms of section 11.17, however, the licensing exemption applies only to "credit unions..., their officers, employees, and agents." V.T.C.S. art. 2461-11.17. The exemption does not extend to independent dealers of the securities.

The transaction exemption provided by section 11.17 does not exempt credit unions from compliance with the substantive requirements of the Texas Securities Act. Most important, the offer and sale of

securities by credit unions remain subject to the anti-fraud protections of the Securities Act. See, e.g., Securities Act, V.T.C.S. art. 581 §§3, 23, 28, 29, 32, 33.

The section 11.17 exemption from the Securities Act registration and licensing requirements is similar to the transaction exemptions provided by section 5 of the Securities Act. V.T.C.S. art. 581-5. As found in the legislative history, the purpose of the current enactment of section 11.17 was to provide credit unions with the same transaction exemption granted to banks and savings and loan institutions. Statement of Representative Gerald Hill before the House Comm. on Financial Institutions, Hearings on H.B. No. 1399, April 7, 1981, on tape filed with House Hearing Reporter.

The Securities Act exemption for banks and savings and loan institutions is found in section 5(L) which exempts from application of the act the offer and sale of securities as follows:

> The sale by the issuer itself, or by a registered dealer, of any security issued or guaranteed by any bank organized and subject to regulation under the laws of the United States or under the laws of any State or territory of the United States, or any insular possession thereof, or by any savings and loan association organized and subject to regulation under the laws of this State, or the sale by the issuer itself of any security issued by any federal savings and loan association.

V.T.C.S. art. 581-5(L). Although they are exempt from the registration and licensing requirements of the Securities Act by section 5(L), securities issued by banks and savings and loans are still subject to the act's anti-fraud provisions. See Securities Act, V.T.C.S. art. 581, §32. The exemption of section 11.17 of the Texas Credit Union Act should be applied in the same manner as the exemption provided by section 5(L) of the Securities Act.

As a final question, you ask to what extent the Texas credit union commissioner is authorized to approve or disapprove the issuance of debt securities by credit unions. Section 11.17 gives the commissioner the authority to approve and otherwise regulate the offer and sale of securities by credit unions. The second sentence of that section clarifies this authority by stating that "[t]he sale, issuance, or offering of any [security issued by a credit union] is legal without any action or approval on the part of any official, other than the credit union commissioner,...." V.T.C.S. art. 2461-11.17.

While enabling the commissioner to approve or disapprove credit union bond issues, section 11.17 in itself does not require affirmative action by the commissioner in this regard. Instead, the proviso in the first sentence of that section allows approval and other regulation of credit union securities "as required by [the Credit Union] Act." Consequently, the regulation is conducted by the commissioner according to other provisions of the act and the rules promulgated under the act which are applicable to credit union securities.

The only statutory requirement of commissioner approval for credit union securities is found in article 2461-4.01(10) section 4.01(10), V.T.C.S. That section requires prior approval by the commissioner of all credit union debt which exceeds twenty-five percent of its shares, deposits, and surplus. That is, when the issuance of debt securities, combined with all other credit union debt, will exceed the twenty-five percent limit, the credit union is required to obtain prior commissioner approval before the securities could be offered or sold.

The issuance of securities by credit unions would also be subjected to further scrutiny under such administrative rules which the commissioner enforces. V.T.C.S. art. 2461-11.10(b). At present there are no applicable rules which have been adopted by the Texas Credit Union Commission under its rule making authority. V.T.C.S. art. 2461-11.07.

## S U M M A R Y

Credit unions organized under the Texas Credit Union Act are authorized to issue debt securities. These securities may be sold to the general public as well as to credit union members. While exempt from the registration and licensing requirements of the Texas Securities Act, credit union securities are not exempt from the anti-fraud provisions of that act. The credit union commissioner has the authority to regulate credit union securities.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jeffery L. Hart
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jeffery L. Hart
Jim Moellinger